IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EVERETT SHELTON,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., and SOUTHWEST CREDIT SYSTEMS, L.P.,<br><br>　　　Defendants. | Civil Action No. 2:16-cv-01650<br><br>Honorable Paul S. Diamond |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES AND PAY COSTS**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendant Experian Information Solutions, Inc. ("Experian") moves this Court to compel Plaintiff James E. Shelton to (i) produce documents responsive to Experian's First Requests for Production; (ii) serve complete answers to Experian's First Set of Interrogatories; (iii) permit inspection of Plaintiff's cell phone, email, and social media accounts by a forensic analyst for the purpose of identifying and collecting responsive information or determining whether it once but no longer exists; and (iv) pay Experian its attorney's fees and costs reasonably incurred in bringing this motion and to pay the reasonable costs of inspection by a forensic analyst.

## INTRODUCTION

This motion is necessary given Plaintiff's refusal to adequately respond to Experian's First Set of Requests for Production of Documents and First Set of Interrogatories (collectively, "Experian's Requests") served upon Plaintiff on September 2, 2016, notwithstanding Experian's good-faith efforts to resolve the issues without seeking the Court's intervention.  The Court

should not permit Plaintiff's frustration of the discovery process. Plaintiff first denied that responsive documents exist and responded to some interrogatories by saying only that they were "Not applicable." Later Plaintiff admitted the opposite, and still continues to rebuff Experian's attempts the obtain the documents and information.

## FACTUAL BACKGROUND

1. Plaintiff filed this action on or about April 8, 2016. In Plaintiff's Complaint, Plaintiff alleges that a $134 collection account that briefly appeared on his credit file belonged to another individual, his father. (*See* Dkt. 1.)

2. This case was initially assigned to Judge Dalzell, who afforded a brief period for the parties to informally resolve the case before entering a Scheduling Order on Aug. 31, 2016. (*See* Dkt. 17.)

3. On September 2, 2016, Experian served its First Set Request for Production, First Set of Interrogatories, and First Set of Requests for Admission (collectively, "Experian's Requests") via electronic mail and first class U.S. Mail. (*See* Exhibits 1 through 3.)

4. On October 5, 2016, Plaintiff responded to Experian's Requests, including a Verification with a Docusign stamp rather than a signature. (*See* Exhibits 4 through 6.[1]) Plaintiff, however, produced no documents in connection with his responses.

5. Experian made attempts to confer with Plaintiff regarding deficiencies in the responses received, including responses that were at odds with information available to Experian and responses indicating documents would be produced but had not been.

6. Based on the dates provided by Plaintiff's counsel, Plaintiff's deposition was noticed for November 18, 2016.

---

[1] Because Plaintiff's responses to Experian's First Set of Interrogatories contains personal information, the attached Exhibit has been redacted to remove plaintiff's social security number, address, and information about plaintiff's income.

7.      At the deposition on that date, Plaintiff was shown a copy of his responses to Experian's Requests for Production of Documents and was asked whether he was aware that Experian had requested documents.  (*See* Exhibit 7 (Pltf.'s Depo.), pp. 253:14 – 255:16.[2])  Plaintiff admitted that he had first learned about Experian's Requests from his attorney the night before his deposition (over six weeks after he responded to the requests through his attorney).  (*See id.* at p. 255:9 – 13.)  Plaintiff also confessed he had not searched for any responsive documents.  (*See id.* at pp. 255:9 – 13; 257:16 – 21).

8.      Experian's Request to Produce No. 10, among other things, sought "[a]ll . . . correspondence . . . regarding the subject matter of this action."  (*See* Exhibit 1, p. 6.)  Plaintiff's responses to Experian's Request raised no objection and simply indicated: "None."  (*See* Exhibit 4, p. 2.)  At Plaintiff's deposition, he admitted he has used a variety of communications platforms—including Facebook, Facebook Messenger, personal email, and text messages—to discuss this lawsuit with family, friends, and a larger online audience:

> Q:  Okay.
>
> A:  I made a Facebook post saying that I was engaging in litigation. But I discuss numerous litigation topics.
>
> Q:  Do you send -- do you use Facebook Messenger to communicate with your family and friends on this topic?
>
> A:  Occasionally.
>
> Q:  Okay. Do you use your school email or computer for these types of matters?
>
> A:  Well, I don't think I use my school email to communicate to my attorney or to my friends and family about this type of thing. I use my personal email or my business email in regard to those type of things.

---

[2] Experian received a copy of the transcript of plaintiff's deposition via email on December 1, 2016.  To date, Experian has not received plaintiff's signature or errata sheet making any corrections to the deposition transcript included as Exhibit 7 to this motion.  Also, due to length and the sensitive information contained in the deposition transcript, only the portions cited in Experian's motion are included in Exhibit 7.  Upon request of the Court, Experian will file a full transcript of Plaintiff's deposition.

(*See* Exhibit 7 (Pltf.'s Depo.), pp. 259:13 – 260:2.)  Similarly, Plaintiff testified: "I talk to my parents about litigation quite often, almost to the point where they want me to be quiet about it." (*See id.* at p. 163:16 – 19.)  And Plaintiff testified he uses text messages and Facebook to communicate with others on these topics.  (*See id.* at pp. 259:17 – 20; 258:14 – 19.)

9. Experian's Request to Produce No. 4 sought "[a]ll Documents," a broadly defined term that includes electronic and physical evidence, "relating to any correspondence or communication between Plaintiff and a consumer credit reporting agency other than Experian." (*See* Exhibit 1, p. 5.)  Plaintiff, again without objection, flatly responded: "Not applicable."  (*See* Exhibit 4, p. 1.)  But at Plaintiff's deposition, a different story unfolded:

> Q: So what did you do?
>
> A: Well, I spoke with my father and I said, "Do you know anything about this?" And I -- once I figured out that it was his account, I waged a dispute with TransUnion, who had reported the account to Capital One's Credit Tracker.
>
> \* \* \*
>
> Q: And I think you said that then you called TransUnion to dispute?
>
> A: Correct. I waged a dispute with them.
>
> Q: Okay. What do you mean when you say "I waged a dispute"?
>
> A: Well, I disputed that the account was not mine and that it was a member of my family, specifically my father's. And TransUnion sent me an email, and I believe also a letter, stating that the account had been deleted from my file.
>
> Q: Did you -- when you waged the dispute, did you call them on the phone?
>
> A: I believe I did call them, but I think there was also something online. I'm not really sure, to be honest. I do remember calling them.
>
> Q: Okay.
>
> A: And I do remember receiving an email from them.
>
> Q: Okay.  And that email is how you figured out that they had deleted the account?

-4-

> A: Yes. And I believe they sent me that in the mail as well after I requested it from them.
>
> Q: Where did you ask them to send it to?
>
> A: 316 Covered Bridge Road.
>
> Q: And you were satisfied with how that worked out?
>
> A: Yes. They deleted it, so I would say yes.
>
> Q: Did -- do you know if Equifax was --
>
> A: Equifax never reported the account.
>
> Q: Oh, Equifax never reported, okay. How do you know that?
>
> A: I called them and confirmed it. And I obtained a copy of my credit report from them and it was never on there.
>
> Q: How did you get a copy of your credit report?
>
> A: I believe it was annualcreditreport.com.

(*See* Exhibit 7 (Pltf.'s Depo.), pp. 44:4 - 10; 46:24 – 48:10.)

    10.    At Plaintiff's deposition on November 18, 2016, Plaintiff was also shown a copy of Plaintiff's responses to Experian's Interrogatories, which Plaintiff had verified. Plaintiff admitted he had "[v]ery briefly" looked at his responses—"Not even five minutes"—and further indicated: "I'm not saying that everything in here is completely inaccurate," the implication of which is that some are inaccurate. (*See* Exhibit 7 (Pltf.'s Depo.), pp. 261:9 – 15; 268:5 – 15.) For example, Plaintiff's response to Experian's interrogatory No. 4, which asks plaintiff to identify any other litigation in which plaintiff is involved, is straightforward: "Not applicable." (*See* Exhibit 4, p. 1.) In his deposition, however, Plaintiff admitted he is a professional debt buyer and judgment-debt collector. (*See* Exhibit 7 (Pltf.'s Depo.), pp. 25:8 – 27:24.) Even setting aside his profession, Plaintiff testified to at least five additional lawsuits in state courts either shortly before or after suing Experian. (*See id.* at pp. 33:16 – 40:20.)

11. Counsel for Experian made a request on the record at the deposition that plaintiff supplement his responses to Experian's Requests. Counsel for Plaintiff declined to discuss further and requested a deficiency letter as a prerequisite. (*See* Exhibit 7 (Pltf.'s Depo.), pp. 29:12 – 31:6.)

12. Following Plaintiff's deposition, Experian wrote to Plaintiff on November 21, 2016, regarding Plaintiff's sworn testimony and the lack of effort to meaningfully respond to Experian's discovery requests it revealed. Experian requested that Plaintiff provide revised responses and accompanying documents before the close of business a week later on Monday, November 28, 2016. (*See* Exhibit 8.)

13. In a phone call on the following day, November 22, 2016, Plaintiff's counsel indicated that Plaintiff would comply and provide supplemental responses and documents. Plaintiff did not provide supplemental responses or produce any additional documents by November 28, 2016. Nor did Plaintiff request additional time to do so.

14. On November 30, 2016, having received neither documents nor supplemental responses, and with less than a week left before the Settlement Conference scheduled, Experian again wrote to Plaintiff noting that Plaintiff had not produced any additional supplemental documents or responses and had not asked for additional time to do so. Experian notified Plaintiff that it would seek the court's intervention if Plaintiff did not comply with his obligations under the Federal Rules of Civil Procedure or with his agreement to supplement his responses and production of documents. (*See* Exhibit 9.)

15. On December 2, 2016, in the afternoon of the last business day before the Settlement Conference, Plaintiff produced one page of material sought by Experian: a screenshot of a post from Facebook made on April 15, 2016 that discussed Plaintiff's embarking on a

"possibly . . . profitable" federal lawsuit in which Plaintiff would "force [the defendants] to spend thousands in Attorney's fees," and stating "that alone is worth it to me." (*See* Exhibit 10.)

16. Also on December 2, 2016, Plaintiff's counsel emailed that he "checked with [his] client and [his client] has no text messages related to the case," which is at odds with the facts to which his client has testified but, if true, indicates that the documents no longer exist because they were not preserved. In addition, Plaintiff's counsel offered no explanation as to why no supplemental responses to Experian's interrogatories had been provided, nor when—or whether—Plaintiff would provide supplemental responses. (*See* Exhibit 11.)

17. On December 5, 2016, the Settlement Conference before Judge Hart was held and, despite raising the issue, no additional information was provided by Plaintiff's counsel. Nor did Plaintiff's counsel provide a timetable for responding.

18. On December 8, 2016, this court issued a Scheduling Order requiring setting a deadline of December 29, 2016 for dispositive motions. (*See* Dkt. 25.)

19. On December, 9, 2016, Experian wrote to Plaintiff yet again indicating the urgency for Plaintiff's supplemental responses in light of the impending deposition of Plaintiff's father, the need to resume the deposition of Plaintiff on those documents, and the short timeline for filing for summary judgment. (*See* Exhibit 12.)

20. Since then, Plaintiff's counsel has corresponded twice with Experian regarding other matters relative to this lawsuit but has declined to respond to Experian's requests. (*See* Exhibits 13 and 14.)

## ARGUMENT AND CITATION TO AUTHORITY

Rules 33 and 34 of the Federal Rules of Civil Procedure require a party responding to discovery to fully answer requests to produce and interrogatories, respectively, within 30 days, and Rule 26(e) imposes upon all parties a duty to supplement his or her discovery responses in a timely manner or as ordered by the Court.  If a party fails to fully respond or supplement, Rule 37 gives the Court the power to compel discovery and to award costs to the party seeking to compel discovery.  *See Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 448–49 (D. Conn. 2010) (granting a motion to compel seeking forensic analysis of devices based on concerns of failure to preserve and/or failing to meet discovery obligations and apportioning 80% of the costs of forensic analysis to the delinquent party, as well as awarding attorney's fees and costs to the party bringing the motion to compel).

Plaintiff has failed to fully respond to Experian's Requests.  Additionally, Plaintiff has failed to review and supplement his discovery responses in a timely manner as required by Fed. R. Civ. P. 26.  Furthermore, Plaintiff's counsel has indicated he "checked with [his] client and [Plaintiff] has no text messages related to the case."  Plaintiff's counsel does not assert he has inquired about email, Facebook messages, or the other channels of communication that Plaintiff uses.  Moreover, this assertion seems at odds with the facts to which his client has testified under oath at his deposition.  If true, however, it indicates that they no longer exist because they were not preserved.

Accordingly, Experian moves this Court to issue an order compelling Plaintiff to (i) produce documents responsive to Experian's First Requests for Production; (ii) serve complete answers to Experian's First Set of Interrogatories; (iii) permit inspection of Plaintiff's cell phone, email and social media accounts by a forensic analyst for the purpose of identifying

and collecting responsive information or determining whether it once but no longer exists; and (iv) pay Experian its attorney's fees and costs reasonably incurred in bringing this motion and the reasonable costs of inspection by a forensic analyst.

### A. Requests for Production of Documents

At his deposition, Plaintiff testified that he did not look for documents that were responsive to Experian's requests. And how could he have? Plaintiff admitted he first learned of Experian's Requests from his attorney the night before his deposition on November 18, 2016, which was over six weeks after Plaintiff responded to Experian's requests through counsel on October 5, 2016, and months after Experian requested the documents on September 2, 2016.

What's more, it became apparent at Plaintiff's deposition that his responses to Experian's Requests were inaccurate. Plaintiff admitted as much. The most obvious examples were Plaintiff's responses to Experian's requests seeking correspondence or communications with others regarding the subject matter of the lawsuit (*see* Exhibit 1, p. 6) and communications with other credit reporting agencies (*see id.* at p. 5). But Plaintiff's admission that he has conducted no search for responsive documents suggests the problem goes beyond the requests that are most obviously deficient.

#### 1. Experian's Requests for Production of Documents Number Ten

Experian's Request to Produce No. 10, among other things, sought "[a]ll . . . correspondence . . . regarding the subject matter of this action." (*See* Exhibit 1, p. 6.) Plaintiff's one-word response to Request No. 10: "None." (*See* Exhibit 4, p. 2.) But at Plaintiff's deposition, he admitted he has used a variety of communications platforms—including Facebook, Facebook Messenger, personal email, and text messages—to discuss this lawsuit with family, friends, and others. (*See* Exhibit 7 (Pltf.'s Depo.), pp. 259:13 – 260:2.) To date, after numerous

phone conversations, emails, and formal letters, Plaintiff has produced but one document in response to this request—a one-page screenshot of an online posting—on the eve of the settlement conference and after the close of discovery.

                2.        Experian's Request for Production of Documents Number Four

Experian's Request to Produce No. 4 sought "[a]ll Documents," a broadly defined term that includes electronic and physical evidence, "relating to any correspondence or communication between Plaintiff and a consumer credit reporting agency other than Experian." (*See* Exhibit 1, p. 5.)  Plaintiff flatly responded: "Not applicable."  (*See* Exhibit 4, p. 1.)  But at Plaintiff's deposition, Plaintiff acknowledged he had received emails, mail correspondence, and electronic documents from both of the other national consumer credit reporting agencies—Trans Union and Equifax.  (*See* Exhibit 7 (Pltf.'s Depo.), pp. 44:4 – 10; 46:24 – 48:10.)  In short, the documents exist or at least did exist in the recent past.  And the documents speak to whether the emotional distress Plaintiff alleges was caused by Plaintiff's interactions with Trans Union and not by his interactions with Experian.

    **B.**    **Deficient Interrogatory Responses**

The problem is not isolated to Plaintiff's responses to Experian's Requests for Production of Documents.  Plaintiff admitted he spent very little time—"Not even five minutes"—to review the interrogatory responses and implied that he was told to sign them with the click of a button. (*See* Exhibit 7 (Pltf.'s Depo.), pp. 261:9 – 15; 268:5 – 15.)  In candor, the Plaintiff acknowledged, "I'm not saying everything in here is inaccurate," which suggests what became apparent—some of the responses are inaccurate, in spite of what Plaintiff's mouse-click signature on the Verification purports to say.  (*See id.*)  In sum, Plaintiff's own sworn testimony at his deposition

suggests that he did not make a meaningful effort to respond and his responses are factually untrue.

This has prejudiced Experian's ability to understand who had knowledge of the facts essential to the dispute until the window for discovery was all but closed and it impeded Experian's ability to pursue information that Experian may have been able to access had it known it existed.  Two examples where Plaintiff's deposition testimony contradicted his verified responses include Experian's Interrogatories Nos. 4 and 11.

### 1. Experian's Interrogatory Number Nine

Experian's Interrogatory No. 11 asked Plaintiff to "[i]dentify all Persons having knowledge of any of the facts, occurrences, and matters set forth in the Complaint (including, but not limited to, any debt owed to Comcast at any time) and describe generally the substance of the knowledge possessed by each such Person." (*See* Exhibit 2, p. 6.)  Plaintiff's verified response was: "See Plaintiff's Initial Disclosures." (*See* Exhibit 5, p. 3.)  Other than pointing to unknown persons affiliated with the named Defendants, Plaintiff's Initial Disclosures only identify two people—Plaintiff and Plaintiff's father—and do not describe the substance of the knowledge possess by either.  (*See* Exhibit 15, p. 1.)  But at Plaintiff's deposition, he testified that he discussed the facts underlying the litigation and the lawsuit itself at various times with his mother, his present roommates, his former roommates, and various friends:

> Q: Okay. Did you talk to Robert Wagner about the credit reporting issues?
>
> A: I talked to Bobby about it, yes.
>
> * * *
>
> Q: What about Garrett and Sam, what have you told them about the credit reporting issues and the lawsuit?

> A: I just told them that I had a lawsuit in Federal Court and that I had a deposition to take today and that – they asked what it was about, and I just said that it was a mix up with a credit file.
>
> * * *
>
> Q: Other than Robert Wagner, Garrett Ruderman, and Samuel Weinberger, is there anybody else on campus at Case Western that either knows about this lawsuit or knows about the credit reporting issues that you've experienced?
>
> A: I mentioned it to a few friends, but like I said, none of this I went into real detail about, because I like to keep that stuff between -- I like to keep my private stuff private. Personal business is personal business. So I don't think if you were to ask them they would really know details about this, other than that I had filed a lawsuit and that I was being deposed today.

(*See* Exhibit 7 (Pltf.'s Depo.), pp. 212:20 – 22; 214:3 – 10; 215:7 – 20.)  Even if these persons knew comparatively little, Plaintiff undeniably was aware that they knew something.  This kind of information should have been included in Plaintiff's Rule 26(a) disclosures, which he served on June 30, 2016, or at the latest when he responded to Experian's Interrogatories on October 5, 2016.  This would have afforded Experian adequate time to determine how to contact these witnesses and evaluate whether the information they possessed was relevant to the instant litigation.  They are apparently some of the only persons who might have any knowledge of Plaintiff's alleged emotional distress besides Plaintiff.

    2.    <u>Experian's Interrogatory Number Four</u>

Experian's Interrogatory No. 4 asked Plaintiff to "[i]dentify all other lawsuits in which the Plaintiff is or was a party, including for each suit the case number, the name of the Court, the style of the case, the subject matter of the case, the amount in controversy, the Court's holding, if any, and the amount of damages awarded or the terms of any settlement."  (*See* Exhibit 2, p. 4.)  In a response that Plaintiff "verified," he asserts: "Not applicable."  (*See* Exhibit 4, p. 4.)  Then at his deposition, Plaintiff admitted he is a professional debt buyer and judgment debt collector, and has also brought a series of cases—at least 5 in addition to the present lawsuit—as a consumer

asserting various claims under federal and state laws. (*See* Exhibit 7 (Pltf.'s Depo.), pp. 25:8 – 27:24; 33:16 – 40:20.) One would never know that by reading Plaintiff's response to Interrogatory Number Four.

      **C.**      **Plaintiff's Counsel's Response Suggests the Possibility of Preservation Issues**

To date, Plaintiff has produced one page responsive to Experian's requests—a screenshot of a Facebook post from April 15, 2016—and nothing more.

Plaintiff's counsel has indicated he "checked with [his] client and [Plaintiff] has no text messages related to the case." (*See* Exhibit 11.) But plaintiff testified he uses many avenues to communicate with others on this topic—Facebook, personal email, etc.—and Plaintiff's counsel does not assert he has inquired about anything beyond text messages. Additionally, counsel's assertion seems inconsistent with his client's testimony and, if true, it indicates that they no longer exist because they were not preserved.

Experian believes the only adequate remedy is to inspect the devices and accounts at issue to ascertain whether responsive documents or information exist and, if not, whether that is the case because it was not preserved. While inspection necessarily entails some inconvenience and intrusion, this relief would not be necessary had Plaintiff preserved the documents related to the lawsuit and had he gathered and produced them. Experian also notes that the intrusion into personal matters can be limited through the appointment of a neutral forensic analyst and through the use of terms and connectors to isolate the material to information and documents responsive to Experian's requests.

WHEREFORE, Defendant Experian Information Solutions, Inc., prays the Court to issue and order compelling the Plaintiff to:

(1) Serve adequate responses to Experian's First Set of Interrogatories;

(2) Produce documents responsive to Experian's First Requests for Production;

(3) Permit inspection of Plaintiff's cell phone, personal email and social media accounts by a forensic analyst for the purpose of identifying and collecting responsive information or determining whether it once but no longer exists;

(4) Pay Experian its attorney's fees and costs reasonably incurred in bringing this motion and to pay the reasonable costs of inspection by a forensic analyst; and

(5) For such other and further relief as the Court may deem just and proper.

Dated: December 12, 2016

Respectfully submitted,

*/s/ John Paul Putney*
John Paul Putney, Esq.
Pa. Bar No. 318689
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA:        15219
Telephone:    (412) 391-3939
Facsimile:     (412) 394-7959
*Admitted Pro Hac Vice*

Mohammad A. Ghiasuddin, Esq.
Pa. Bar No. 83925
MARGOLIS EDELSTEIN
The Curtis Center, Suite 400E
170 S. Independence Mall W.
Philadelphia, PA 19106-3337
Telephone:    (215) 931-5802
Facsimile:     (215) 922-1772

**Counsel for Defendant
Experian Information Solutions, Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2016, I electronically filed Experian's Motion to Compel Plaintiff's Discovery Responses and Pay Costs with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record identified via transmission of Notices of Electronic Filing generated by CM/ECF.

| | |
|---|---|
| Mark D. Mailman, Esq.<br>Gregory J. Gorski, Esq.<br>FRANCIS & MAILMAN, PC<br>Land Title Building, 19th Floor<br>100 South Broad Street<br>Philadelphia, PA:     19110<br>Ph. (215) 735-8600<br>Email: mmailman@consumerlawfirm.com<br>         ggorski@consumerlawfirm.com<br><br>***Counsel for Plaintiff, James Everett Shelton*** | Richard J. Perr, Esq.<br>Monica M. Littman, Esq.<br>FINEMAN KREKSTEIN & HARRIS, P.C.<br>Ten Penn Center, Suite 1100<br>1801 Market Street<br>Philadelphia, PA:     19103<br>Phone: (215) 893-8719<br>Email:   rperr@finemanlawfirm.com<br>            mlittman@finemanlawfirm.com<br><br>Justin M. Tuskan, Esq.<br>Brian T. Must, Esq.<br>METZ SCHERMER & LEWIS<br>535 Smithfield Street, 8th Floor<br>Pittsburgh, PA:     15222<br>Phone: (412) 918-1100<br>Email:   jtuskan@metzlewis.com<br>            bmust@metzlewis.com<br><br>***Counsel for Defendant***<br>***Southwest Credit Systems, L.P.*** |

Respectfully submitted,

*/s/ Mohammad A. Ghiasuddin*
***Counsel for Defendant***
***Experian Information Solutions, Inc.***